299 So.2d 583 (1974)
THE FLORIDA BAR, Complainant,
v.
John A. REED, Respondent.
No. 44613.
Supreme Court of Florida.
March 27, 1974.
Rehearing Denied May 22, 1974.
Norman A. Faulkner, Tallahassee, Staff Counsel, The Florida Bar, for complainant.
John A. Reed, in pro. per.
PER CURIAM.
This disciplinary case has been briefed and comes on for final disposition. Oral argument is dispensed with particularly because Respondent John A. Reed has fallen so far short of demonstrating in his proofs or his brief any basis for further delay or justification for oral argument before final disposition of the case.
The case discloses that the Referee found the Respondent had neglected his professional duty to a client and as a consequence appears unworthy of professional trust as an attorney with the credentials of membership in The Florida Bar.
In the Referee's extensive report, the following resume of Respondent's professional neglect in representing his client appears:
The Respondent was employed to represent a client, Carber E. Strange, who had been convicted without an attorney of a criminal charge in municipal court. Strange came to Respondent's office on August 25, 1970, and asked him to handle his appeal, pointing out judgment of conviction was entered on August 3, 1970, and there was no time to waste since the time limit to file notice of appeal was thirty days from the judgment. Respondent agreed to take the case and accepted a $10 retainer, his total fee to be $750. On September 3rd, 1970 he went to Strange and received his check for $375 on the fee. Respondent did not file the notice of appeal but kept assuring Strange that the time for filing was 90 days after judgment. Respondent finally filed the notice on October 28, 1970. It was dismissed as untimely *584 on March 23, 1971. A third check for $50 was given Respondent by Strange on account on December 15, 1970, as well as miscellaneous items of merchandise toward the total fee.
The Referee found that Respondent failed altogether to perfect an appeal for Strange and accepted the related payments without rendering the agreed professional service in the case.
The Respondent's defense before the Referee to Strange's complaint was found by the Referee to be further evidence of duplicitous unprofessional misconduct.
Respondent claimed the money he received by checks from Strange was not for appeal services in the criminal case but was to incorporate Strange's television repair business and thereby insulate him from the demands of his creditors.
Respondent offered as a witness in his behalf one Arnold Caudle who testified before the Referee that he spent much time with his friend, the Respondent, in the summer of 1970; that he was present at the August 25, 1970 meeting of Respondent and Strange and that nothing was discussed except problems relating to Strange's creditors. He also testified that he was present when the $350 check was given and it was only for the incorporation work. Caudle claimed he was present at "several" meetings of Respondent and Strange at the latter's TV repair shop.
The Referee found that Respondent did incorporate a company for Strange but it was not completed until January 5, 1971, well after the time the matter concerning the criminal appeal had transpired.
The Referee found the witness Caudle's testimony was unworthy of belief and was so "pat" it appeared to be manufactured. He concluded from the evidence that Strange had in fact paid Respondent for an appeal but that notice of same was neglectfully delayed and that the Respondent's claim that the fees were paid for the incorporation work was an after-the-fact fabrication to excuse the neglect.
In another criminal case, Strange was represented by Respondent and appeared for him at a trial in the City of Titusville Municipal Court on November 23, 1970. Strange was convicted and sentenced to a mandatory 10 days imprisonment and an alternative $501 fine or 60 days imprisonment on an assault and battery charge and an alternative $201 fine or 30 days imprisonment on a resisting arrest charge. The same fees paid in the appeal case were found by the Referee to also pay for Respondent's services in the assault and resisting arrest case. The Respondent filed a timely notice of appeal in the latter case, but the appeal eventually was dismissed for his neglectfully failing to file instructions to the clerk of the municipal court to perfect the appeal or his brief therein.
The Referee recommended as follows:
"V. RECOMMENDATIONS OF DISCIPLINARY MEASURES
"It is recommended that Respondent be disbarred from the practice of law in Florida.
"In view of the severity of the penalty, it is appropriate to give the Referee's rationale. Integration Rule 11.02 reads in part:
`The primary purpose of discipline of attorneys is the protection of the public... ... .'
"When the Supreme Court issues a license to practice to a new lawyer, it is a representation to the public at large that the individual in question is competent to handle the legal affairs of any citizen. When the Supreme Court learns that it has erred in its evaluation and has an opportunity to correct its error, it owes it to the public to do so.
"Respondent's failure to follow mandatory appellate procedures in the two misdemeanor cases here involved, in and of *585 itself, is not a mortal sin. Many lawyers of average competence and diligence will stub their toes on appellate time strictures at least once in their careers. Rather, certain matters which came out tangentially in this affair impel us to the suggested Draconian solution.
"A pre-hearing conference was held on June 11 at which it was agreed that the date of the hearing would be July 2. Respondent had counsel as of June 11. The July 2 hearing was postponed to August 3 because of Respondent's illness. Yet, on August 2, Respondent's then counsel, who, as a matter of professional courtesy, was serving without pay, filed a motion for leave to withdraw on the ground that over the preceding period of almost two months, Respondent had failed to respond to counsel's urgent phone calls made in an effort to arrange a conference to prepare a defense. The Referee convened the August 3 hearing for the purpose of giving a very explicit warning to Respondent of the seriousness of his position. This was done and the case was reset for August 23.
"At the August 23 hearing, Respondent's new counsel orally requested a continuance saying that Respondent had not employed him until August 21  two days before the hearing and eighteen days after being urged in the strongest terms to start preparing the case. A continuance of an hour and a quarter was granted and thereupon the hearing went forward.
"When a lawyer adopts such a carefree and lackadaisical attitude toward litigation in which his own professional career is at stake, how can it be expected that he will show any greater concern for the affairs of his clients? Respondent should have been aware of the possible consequences of these proceedings, for at the August 3 hearing, Respondent was furnished with a copy of those pages of the Table of Past Disciplinary Judgments in the Grievance Procedures Notebook relating to neglect of duty matters. Perhaps a psychiatrist could explain Respondent's insouciant attitude; the Referee cannot. However, the Referee does have a firm conviction that the public must be shielded from such a lawyer as this.
"Additional light was thrown on the degree of Respondent's legal competency by his testimony:
"1. That he thought he could protect Strange from existing creditors by incorporating the TV shop.
"2. That he thought that an unjournalized telephone conversation with a trial judge effectively could extend the time for filing a motion for rehearing, for which the filing time already had expired.
"3. He showed a very hazy understanding of the functions of, and the interrelationships between, the various appellate steps.
"Finally, when the purpose of the giving of the three checks by Strange to the Respondent became an issue, inquiry was made as to what his office books and records would show. Respondent answered that his only financial records are the stubs of his receipt books in which cash received is recorded and pieces of paper stapled to each file jacket on which financial transactions related to that case are recorded. That prompted the further inquiry as to how he could properly maintain his trust account without better records. Respondent replied that he has no trust account since his practice is largely criminal.
"It is difficult to believe that a lawyer could be in practice for twenty years without having handled a single collection matter or a single real estate or other transaction which would involve possession of a client's funds. Even if that be true, the Referee has been given little reason to have confidence that a proper trust fund would be established when *586 some matter involving a client's funds does come into Respondent's office next year.
"In sum, the public needs to be protected from Respondent. The Referee would fall short of his duty under Intergration Rule 11:02, were he to recommend any penalty less than disbarment."
We have carefully reviewed the evidence and the Referee's findings and recommendations. It is our view that the case made is not sufficiently strong to justify disbarment because there are a number of inconclusive factors and uncertainties in the evidence. The Referee undoubtedly was provoked by the apparent general lack of diligence and triflingness of Respondent and his ostensibly transparent efforts to excuse his neglect of Strange's cases. However, it is not altogether clear from the ramifications of Strange's cases that Respondent's representation of him was unadulterably neglectful in every respect. An attorney sometimes has the discretion to "give up" an appeal or defense when a case is hopeless, especially where he may have gained some time or delay for his client in the process of his representation. Strange's reliability may be questioned in view of his convictions in Municipal Court. In fact, both Respondent and Strange's credibility in respect to the nature and extent of the representation for $750 is open to question which was disputedly claimed to cover at least three separate items of legal work. Nevertheless, we feel we would be in error if we should fault or attempt to substitute our judgment for the Referee's finding of Respondent's unprofessional conduct. Our view is that we should reduce the penalty of disbarment to that of suspension because the actual case made is not so flagrantly conclusive to warrant so harsh a result although we agree with the Referee that Respondent's unprofessional conduct merits correction.
We direct that Respondent John A. Reed be suspended from the practice of law for one year from date of this judgment and thereafter until he is able to demonstrate to the satisfaction of the Florida Bar that it can in all good faith recommend to this Court his reinstatement.
Costs in this matter are charged to Respondent.
ADKINS, C.J., and ERVIN, BOYD, McCAIN and DEKLE, JJ., concur.